```
                  UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF TENNESSEE
                         AT NASHVILLE
DANIEL SCOTT BOWMAN,              )
                                  )
        Plaintiff                 )
                                  )       No. 3:16-0773
v.                                )       Judge Trauger/Brown
                                  )       Jury Demand
SHAPIRO AND INGLE, LLP and        )
SPECIALIZED LOAN SERVICING, LLC,  )
                                  )
        Defendants                )
```

**TO: THE HONORABLE ALETA A. TRAUGER**

### REPORT AND RECOMMENDATION

For the reasons stated below the Magistrate Judge recommends that the motion to dismiss by Specialized Loan Servicing, LLC (Docket Entry 30), and the motion to dismiss by Shapiro and Ingle, LLP (Docket Entry 32) be granted and that all other pending motions be terminated as moot.

### BACKGROUND

The *pro se* complaint in this case (Docket Entry 1) alleges that the Plaintiff owns a home and real property located on Graceland Way in Greenbrier, Tennessee. The Defendant Shapiro and Ingle, LLP (Shapiro) is a law firm specializing in debt collection and foreclosures. The Defendant Specialized Loan Servicing, LLC (SLS) is a debt collection company that specializes in buying up distressed mortgages and attempting to either foreclose or collect on the mortgages. The Plaintiff alleges that he purchased the property on or about September 7, 2006. The original sale and mortgage was between the Plaintiff and Countrywide Home Loans. The

deed of trust was endorsed in blank (Docket Entry 18-2 Page id 82) and eventually ended up the possession of SLS.

The holder, SLS, and Shapiro as the law firm after several delays and rescheduling finally sold the property on the courthouse steps on April 26,2016 to Bank of New York Mellon and recorded the sale (DE 18-1). They then on May 4, 2016 filed a detainer warrant for possession in State court. (Docket Entry 18-3).

In his complaint the Plaintiff raises a number of challenges to the rights of the Defendants to enforce payment on the note or to foreclose on the property. He complains about not being able to see the original documents and the use of MERS system of handling the transactions involving the deed of trust. The Plaintiff further alleges in paragraph 33 that in 2008 he exercised his unilateral rights to rescind the transaction pursuant to Regulation Z and that thereafter he owed no obligation to either return the property or to make any further payments on the mortgage.

The Plaintiff alleges in his substantive Counts I through V of intentional misrepresentation concerning the original loan documents; negligent misrepresentation with the original mortgage company that negligently misrepresented themselves to the Plaintiff; common law fraud; intentional fraud; malicious fraud by not fully disclosing all facts necessary for the truth and accurate representation and execution of the mortgage and deed of trust which the Plaintiff reasonably relied on; fraudulent interstate transactions that used the United States Postal Service for fraud

and deceit to solicit money from the Plaintiff and for carrying out the fraudulent scheme; and slander of title by attempting to represent themselves as holders in due course of the mortgage and deed of trust.

The filing of this complaint on April 22, 2016, appears to have been generated by the defendants notice to the Plaintiff that they would be executing a foreclosure sale on the property on April 26, 2016 (Docket Entry 6-1).

Given the nature of the motion for a temporary restraining order the Magistrate Judge set a telephone conference for the matter as soon as practicable after the service of process was obtained on the Defendants. Based on motions for additional time by the Defendants to respond to the complaint (Docket Entries 12 and 13) it appeared that the April 26th foreclosure date had been canceled and the Magistrate Judge directed the Defendants to respond to the Plaintiff's emergency motion if any foreclosure action was anticipated prior to the June 16th telephone conference about the matter (Docket Entry 14).

Next, the Plaintiff filed a request for an emergency ruling and to require a reply by the Defendants to his motion for a restraining order (Docket Entry 22) filed on June 1, 2016. As a result of this motion, which established there had been a judicial sale, on April 26, 2016, the Magistrate Judge took under advisement the motion for an emergency stay. Because there was now a hearing set in state court on the detainer warrant prior to the June 16th

hearing set before the undersigned the hearing on the Plaintiff's motions was moved up unless the undersigned was advised that the state court detainer hearing was postponed (Docket Entry 23). The Magistrate Judge was subsequently notified that the state court proceeding had been continued until after the June 16th telephone conference (Docket Entry 25).

Subsequently, Shapiro filed an affidavit from Mr. Bishop (Docket Entry 29) in which he stated he was an attorney for Shapiro and was competent to testify. In the affidavit he stated that on or about September 21, 2015, Shapiro received a referral from SLS to foreclose the deed of trust executed by the Plaintiff and recorded in Robertson County. The referral stated that the Plaintiff was negligent in making his monthly payments since April 1, 2008. He stated that he originally scheduled a sale for January 6th 2016, but rescheduled the sale three times until finally holding it on April 26, 2016. He stated that he appeared on behalf of Shapiro to make the sale and that he specifically remembered making the sale and then he recalled one older gentleman being there whom he recognized as a bidder from other sales, but this individual was not interested in out-bidding the lender's bid of $172,000.

Subsequently, SLS and Shapiro filed motions to dismiss (Docket Entries 30 and 32). In their memorandum in support of their motion to dismiss (Docket Entry 31) Shapiro pointed out that the Plaintiff had filed three different lawsuits against different services relating to the property in issue involving the property

4

grounds. The first case, *Bowman v. Countrywide Home Loans, Inc., et al.*, was Middle Tennessee Docket No. 3:10-CV-1159, and was voluntarily dismissed without prejudice on January 31, 2011. In this case the plaintiff complained he was given a notice of foreclosure, and although he had requested verification of the debt, he was not provided proper Truth in Lending Act disclosures when he obtained the loan.

The second, and more critical suit, was filed in Chancery Court for Robertson County, Tennessee, as *Bowman v. Bank of America, et al.*, CH-11-CV-10464. By the time it was over it contained some 29 claims. The Defendant noted that through several different rulings all of the claims were dismissed with prejudice. The Plaintiff appealed the ruling of the chancery court to the Tennessee Court of Appeals, which affirmed the trial court's dismissal of all claims in *Bowman v. Bank of America*, 2014 Tenn. App. LEXIS 127 *5. A copy of this critical decision is attached as Exhibit 1 to this Report and Recommendation.

The last action was the Plaintiff's Chapter 13 bankruptcy petition, which was filed on June 29, 2011, in the Middle District of Tennessee. Bankruptcy No. 3:11-BK-06457. In this voluntary petition on Schedule D the Plaintiff listed the Bank of America Company as having a secured interest by deed of trust in the property in question. The bankruptcy court confirmed the Chapter 13 plan, finding that Bank of America held a valid mortgage and would be paid $1,895.42 monthly on its long-term debt. A review of the

5

bankruptcy case file reveals that no payments were made on the mortgage and the Chapter 13 was subsequently dismissed on February 8, 2016, for nonpayment.

Shapiro joined in the motion to dismiss (Docket Entry 32) and also alleged that the Plaintiff had failed to obtain a restraining order in sufficient time to enjoin the foreclosure sale which was held on April 26, 2016.

Subsequently, the Magistrate Judge gave the Plaintiff 21 days to respond to the motion to dismiss and for the parties to file a reply to any of the three motions then pending. The matter was set for a hearing on all motions on July 28, 2016, (Docket Entry 33).

Subsequently, the Plaintiff filed a motion to set aside the foreclosure (Docket Entry 39) alleging that the Plaintiff had acted in violation of the "unclean hands doctrine" in which he alleged and realleged in some detail his contention that the present Defendants acted unfairly and were responsible for misdeeds by their predecessors that prohibited their executing the right to foreclose on his property (Docket Entry 40).

Finally, on July 26, 2016, two days prior to the hearing, the Plaintiff filed a motion to amend the complaint and a motion for default judgment (Docket Entry 45). The Clerk promptly denied the motion for default judgment (Docket Entry 46), and the Magistrate Judge conducted a hearing on all the motions on July 29, 2016.[1]

---

[1] During the course of the hearing, the Defendants produced the original mortgage and deed of trust for the Plaintiff to examine and make any necessary copies. The Magistrate Judge would note that copies of these documents were provided to the Plaintiff as exhibits to the SLS's

6

**LEGAL DISCUSSION**

The Magistrate Judge believes that despite the rather voluminous pleadings in this matter that the case is resolved through the application of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion). As an initial matter, the previous case filed by the Plaintiff in federal court was dismissed without prejudice and, as the Plaintiff points out in his response (Docket Entry 40), has no preclusive effect.

Unfortunately for the Plaintiff, the case he filed in Chancery Court in Robertson County does have such an effect since it was a dismissal with prejudice, which is a final adjudication even though there was never a jury trial on the matter.

The Magistrate Judge has carefully reviewed a Court of Appeals in this matter (*Bowman v. Bank of America*, 2014 WL 890934 (Tenn. Ct. of App. 2014)), **Exhibit 1** to this report and recommendation. In the opinion the court of appeals sets out in careful details the facts and procedural history of the plaintiff's acquisition of the property and the litigation to the point of the Court of Appeals' decision. The litigation involved the identical property in question here and was instituted because the Defendant Bank of America began foreclosure procedures against the Plaintiff as Successor Trustee to Countrywide Home Loans. The plaintiff

---

memorandum in support of their motion to dismiss (Docket Entry 31).

alleged (1) violations of the Tennessee Consumer Protection Act, (2) fraudulent misrepresentation, (3) three breaches of fiduciary duty, (4) unjust enrichment, (5) civil conspiracy, (6) civil RICO, (7) violations of Tennessee Consumer Protection Act, (8) quiet title, (9) usury and fraud, and (10) slander of title. The Plaintiff alleged that Countrywide, although listed as payee on the note, was not the source of funding and therefore could not claim to be the payee. He contended that he was left without a lender who would perform due diligence and evaluation and that he was therefore excused from payment.

The court further recites that the plaintiff filed an application for a temporary restraining order to stop the foreclosure, which was apparently granted subject to him posting a $17,000 bond. Rather than posting the bond, the plaintiff filed for bankruptcy in June 2011, which was subsequently dismissed for noncompliance in February 2012.

After plaintiff's counsel withdrew in March 2012, the plaintiff elected to proceed *pro se* on his state case. Following dismissal of his first ten claims by the Chancellor in March 2012, in April 2012 the plaintiff filed a motion to amend the complaint. The Chancellor allowed the amendment. The amended complaint included all of the claims from the original complaint and then added claims for (11) malicious fraud, (12) common fraud, (13) fraudulent concealment, (14) theft by deceit, (15) financial damages and losses, (16) fraudulent credit reporting, (17) damages and loss of

his legal rights, (18) harassment, (19) intimidation, (20) slander, (21) fraudulent billing, (22) excessive billing, (23) intentional/malicious misrepresentation for the purpose of inducement to cause plaintiff to disclose sensitive personal and confidential information under false pretenses, (24) mail fraud, (25) fraudulent demands for the payment of false indebtedness, (26) intentional/malicious infliction of serious and emotional distress, (27) deceptive business practices, (28) breach of contract, and (29) fraudulent/false claims to ownership of real property under the false pretense and for the purpose of theft by deceit. The trial court, after at least two hearing, entered a final order on August 27, 2012, which resulted in all claims against the defendants being dismissed with prejudice.

After a lengthy review of the plaintiff's claims and the Chancellor's ruling the Court of Appeals affirmed the Chancellor's rulings resulting in the dismissal of all of the plaintiff's causes of action with prejudice.

Although the Magistrate Judge is preparing a report and recommendation on motions to dismiss, which are normally restricted to the pleadings themselves, the Court may take judicial notice of other court proceedings, and thus specifically takes notice of the three prior judicial proceedings involving the Plaintiff and the mortgage and deed of trust as noted above.

The Plaintiff did not make a claim of rescission in his state court proceedings. However, this claim is barred by the

doctrine of collateral estoppel or judicial estoppel since he was clearly aware of his rescission letters which he states he sent in September 2008, well before he filed his chancery case.

The doctrine of claims preclusions *res judicata* has been defined as follows:

> Claim preclusion (*res judicata*) generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion (collateral estoppel) generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim.

*New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001).

For collateral estoppel (issue of preclusion) to apply:

> (1) the precise issue raised in the present case was raised and actually litigated in the prior proceeding; (2) the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought had a full and fair opportunity to litigate the issue in the prior proceeding.

*Aircraft Braking Systems Corp. v. Local 856, UAW*, 97 F.3d 155, 161 (6th Cir. 1996).

As the Defendant SLS points out the claims the Plaintiff made against Bank of America are the same claims he now makes against Bank of America's successor in this matter, and to the extent that he did not claim a rescission, it was a claim that he was fully aware of and could have made in the state court litigation. For this reason the Magistrate Judge believes that the

position taken by SLS in their memorandum (Docket Entry 31) is well-taken.

The Magistrate Judge also notes that the Plaintiff's contention that he rescinded the mortgage and deed of trust in 2008 is totally inconsistent with his position in his bankruptcy petition that Bank of America held a valid secured claim on his property at the time he filed the bankruptcy petition in 2011.

This inconsistent claim of a valid mortgage in 2011 is in stark contrast to his present claim that he rescinded the mortgage in 2008. As the Supreme Court noted:

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled[.]" Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine,* 532 U.S. 742, 750-52 (2001).

In bankruptcy the Plaintiff was contending that there was a valid debt in order to stave off foreclosure by securing a Chapter 13 plan. His position is clearly inconsistent with his assertion that he rescinded the transaction in 2008 in the present litigation.[2]

---

[2]The bankruptcy petition itself is listed as Docket Entry 31-1.

11

Finally, the Plaintiff has attempted to amend his complaint (Docket Entry 45). However, the Magistrate Judge believes that this motion is too late and should be denied as futile. Rule 15(a) of the Federal Rules of Civil Procedure allows an amendment to be filed 21 days after service of a motion to dismiss under Rule 12(b). In this case the motion to amend was filed well after such a date. Although the right to amend should be freely given in the interests of justice it may be denied if it is futile.

The last motion to dismiss (Docket Entry 32) was filed on June 16, 2016. Adding three days for service, the last possible date allowing for holidays would be July 5, 2016. The Plaintiff's motion to amend was not filed until July 26, 2016. The Plaintiff has not shown a good reason why such an amendment could not have been filed earlier or included in his original complaint. It also fails to overcome the judicial and collateral estoppel arguments cited above, inasmuch as such claims could and should have been raised in the state chancery court case. The Plaintiff has been under an obligation to make payments on the mortgage since 2006. Accordingly, any claim that the Defendants have waited too long to foreclose is unavailing. The loan documents contain a provision that delay in enforcing it's terms does not constitute a waive of any right to foreclose (Docket Entry 13-1 ¶7 and 31-2 ¶12). Each month the Plaintiff has remained under an obligation to make payments, and the fact that the Defendants may have waited a considerable period of time before finally completing a judicial sale, is not

determinative. Obviously, a good bit of the delay was because of the Plaintiff's litigation in district court, state court, and bankruptcy court.

Finally, the Plaintiff's request to set aside the foreclosure is essentially requesting this Court to interfere with a state court detainer proceeding for possession of the property that is now scheduled later this month. The Plaintiff should have an opportunity in that litigation to argue that the foreclosure sale was improperly conducted in April through his testimony that no one actually sold the property at the scheduled time and place.

### RECOMMENDATION

For the reasons stated above, the Magistrate Judge recommends that the motions to dismiss be granted and this case be dismissed with prejudice. In view of this recommendation, the Magistrate Judge believes that the other pending motions can be terminated as moot. Although the Magistrate Judge has reviewed them and believes that should they have to be ruled on, they should be denied.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has **14 days** from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have **14 days** from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within **14 days** of receipt of this Report and

Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *Reh'g denied*, 474 U.S. 1111 (1986).

**ENTER** this 3rd day of August, 2016.

/s/   Joe B. Brown
JOE B. BROWN
United States Magistrate Judge